# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ERIC BEITCHMAN derivatively on
behalf of Nominal Defendant Zenex
International, Inc.,

      Plaintiff,

v.                                          CASE NO. CIV-05-1465
(1) TIMOTHY ADUDDELL,
(2) RON CARTE,
(3) DEBRA G. MOREHEAD,
(4) DAVID ADUDDELL,
(5) JERRY WHITLOCK,
(6) THOMAS PARRISH

      Defendants

       AND

(7) ZENEX INTERNATIONAL,
  INC.,

     Nominal Defendant.

## PLAINTIFF'S MOTION AND BRIEF IN SUPPORT FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND TO AWARD <u>AN INCENTIVE FEE TO PLAINTIFF</u>

# TABLE OF CONTENTS

**Page Nos.**

MEMORANDUM OF POINTS AND AUTHORITIES.................................................. 1

I.      INTRODUCTION…………………………………………….. ......................... 1

II.     THE  SUBSTANTIAL BENEFITS PROVIDED BY PLAINTIFF'S
        ACTION……………………………………………………………………....2

III.    THE  AGREED TO ATTORNEYS' FEES AND EXPENSES
        ARE REASONABLE, INCLUDING PLAINTIFF'S INCENTIVE
        FEE, AND SHOULD BE APPROVED …………………………………………...2

        A.    Plaintiff's Counsel are Entitled To Compensation Based on the
              Substantial Benefits They Have Achieved for the Company .................. 3

        B.    The Requested Fees are Fair and Reasonable................................... ..4

        C.    The *Johnson* Factors Decidedly Support the Requested Fee…………...5

              1.    Time and Labor Involved……………………………………………6

              2.    The Novelty and Difficulty of Questions Raised by the Actions…7

              3.    The Skill Required to Perform the Legal Services Properly……10

              4.    The Preclusion of Other Employment by Attorneys'
                    Acceptance of the Case………………………………………10

              5.    The Customary Fee…………………………………………...10

              6.    Whether the Fee is Contingent or Fixed…………………….12

              7.    The Results Achieved…………………………………………13

              8.    The Experience, Reputations and Ability of the
                    Attorneys………………………………………………………..13

              9.    Undesirability of the Case ………………………………………14

i

      10.    Plaintiff's Incentive Fee……………………………………………..14

IV.    CONCLUSION…………………………………………………………………15

# TABLE OF AUTHORITIES

## Cases

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534, 549 (S.D. Fla. 1988)...................................................... 11

*Bell v. Arnold*,
175 Colo. 277, 282, 487 P.2d 545, 547 (1971) ..................................... 8

*Blum v. Stenson*,
465 U.S. 886, 895 (1984) ..................................................................... 5

*Boeing v. Van Gemert*,
444 U.S. 472, 478 (1980) ..................................................................... 4

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181, 182 (D. Mass. May 1, 1998) .......................................... 11

*Goldberger v. Integrated Resources*,
209 F.3d 43, 47 (2d Cir. 2000) ............................................................ 5

*Gottlieb v. Wiles*,
43 F.3d, 474, 483 (10th Cir. 1994) ...................................................... 5

*Hensley v. Eckerhart*,
461 U.S. 424, 429, 436 (1983) ....................................................... 3, 13

*Hirsch v. Jones Intercable, Inc.*,
984 P.2d 629 (Colo. 1999) ................................................................... 8

*In re Cendant Corp., Derivative Action Litigation*,
232 F.Supp.2d 327, 344 (D.N.J. 2002) .............................................. 14

*In re Gould Sec. Litig.*,
727 F. Supp. 1201, 1203 (N.D. Ill. 1989)............................................. 4

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610, 634 (D. Colo. 1976)............................................... 10

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735, 747-48 (S.D.N.Y. 1985) ........................................ 9

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714, 717-719 (5th Cir. 1974) ................................................................ 5

*Justice v. Civil Service Comm'n of City*
   *and County of San Francisco*, 688 F.2d 615,625 (9th Cir. 1982)........................ 3

*LeBlanc Sternbey v. Fletcher*, 143 F.3d 748, 768 (2d Cir. 1998)............................ 5

*Mills v. Elect. Auto-Lite Co.*,
   396 U.S. 375, 396 (1970)............................................................................... 2, 3, 4

*Savoie v. Merchants Bank*,
   84 F.3d 52, 56 and n. 3 (2d Cir. 1996) ................................................................. 4

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043, 1052-54 (9th Cir. 2002) ............................................................ 11

Federal Rules of Civil Procedure

Fed. R.Civ. P. 23.1 ................................................................................................. 8

Plaintiff Eric Beitchman ("Beitchman" or the "Plaintiff") respectfully requests that this Court grant this Motion and Brief in Support for Attorneys' Fees and Reimbursement of Expenses ("Motion") in its entirety.  In support of this Motion, Plaintiff states as follows:

1.      The above-captioned action is a shareholder derivative action brought on behalf of the Company.

2.      On December 7, 2007, the parties in the above-captioned action entered into the Stipulation and Agreement of Compromise, Settlement and Release of Settlement ("Stipulation"), filed with this Court on the same day and preliminarily approved by this Court on December 14, 2007.  Additionally, a settlement conference was held before The Honorable Lee R. West on October 22, 2007.

3.      Defendants do not oppose this Motion.

WHEREFORE, based upon the foregoing, Plaintiff requests that this Court grant this Motion in its entirety and enter the Order submitted herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The parties, subject to Court approval, have agreed to the Settlement of the above-captioned litigation.  Accordingly, Plaintiff submits this Motion for attorneys' fees and reimbursement of expenses.  The terms of the settlement were reached after extensive arms length and mediator and judicial-assisted negotiations as set forth in the Stipulation.  *See* Dkt. No.104.  The details of the background of this

1

litigation, settlement negotiations and confirmatory discovery are set forth in detail within Plaintiff's Motion and Brief in Support for Final Approval of Settlement ("Settlement Brief"), filed concurrently herewith.

## II.    THE SUBSTANTIAL BENEFITS PROVIDED BY PLAINTIFF'S ACTION

Courts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies.  *See Mills v. Electro Auto-Lite Co.*, 396 U.S. 375, 396 (1970).  The terms of the Stipulation provide that the Board of Directors for Zenex have caused or agreed to cause the Company to initiate and maintain new and significant corporate governance provisions in an effort to protect against future instances of wrongdoing as alleged in the Complaint.  The corporate governance changes which were engendered by the pendency of Plaintiff's action are set forth in detail within Plaintiff's Settlement Brief, filed currently herewith.

## III.   THE AGREED-TO ATTORNEYS' FEES AND EXPENSES ARE REASONABLE, INCLUDING PLAINTIFF'S INCENTIVE FEE, AND SHOULD BE APPROVED

As noted in detail within Plaintiff's Settlement Brief, after the parties completed negotiations regarding the Settlement relief, the parties then negotiated an award of attorneys' fees and reimbursement of expenses (the "Fees and Expense Amount") including an incentive fee to Plaintiff. The fact that the Fee and Expense Amount was negotiated at arm's-length, facilitated by Gary McGowen, a nationally recognized mediator of complex litigation, separate and apart from the benefits being provided to the Company, underscores the fact that

2

the fees are reasonable and should be approved. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983) (holding that an agreed-to fee is an ideal situation because "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

Where, as here, Plaintiff has successfully litigated a shareholder derivative action, they are entitled to an award of attorneys' fees and expense. *See, e.g., Mills v. Elect. Auto-Lite Co.*, 396 U.S. 375, 396 (1970).  Absent adherence to this principle, Plaintiff's counsel would have little incentive to attempt to negotiate a fee to which Defendants would not object.  There would be little reason to negotiate and compromise to bring a matter to closure if the Court were prepared, absent very strong reasons, to second-guess the Settling Parties' valuation of the services performed by Plaintiff's counsel.

Here, Defendants have agreed with Plaintiff's counsel on a fair and reasonable fee and have agreed to pay that fee.  Thus, the Court need only approve the overall Settlement, including the Fee and Expense Amount, as fair, reasonable and adequate. *See, e.g., Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615,625 (9th Cir. 1982).

A.  **Plaintiff's Counsel are Entitled To Compensation Based on the Substantial Benefits They Have Achieved for the Company**

Under the "American Rule" each party ordinarily bears its own costs and attorney fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  An exception to this general rule is that "a litigant or a lawyer who recovers a

common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 394-96 (1970). "This doctrine serves the twin goals of removing a potential financial obstacle to a plaintiffs' pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989). Here, a substantial benefit has been created for Zenex which, as in class cases, merits the award of an attorney's fee based upon the benefit achieved under the analogous "substantial benefit" doctrine. *See Savoie v. Merchants Bank*, 84 F.3d 52, 56 and n. 3 (2d Cir. 1996). The reasonableness of the request is further supported by the fact that the sum requested is the result of arm's-length bargaining among counsel.

### B.   The Requested Fees Are Fair and Reasonable

Plaintiff's counsel is applying for a Fee and Expense Amount of $190,000.00, which is inclusive of attorneys' fees and reimbursement of expenses.[1] Total attorney fees and expenses accrued or incurred in connection with this Action amount to $194,420.99 (in fees) and $24,710.31 (in expenses). *See* Declaration of William B. Federman ("Federman Declaration"), attached hereto as Exhibit 1. Detailed information on the

---

[1] From the aggregate amount of $200,000.00 that will be paid, Plaintiff Beitchman seeks an incentive fee in the amount of $10,000.00, addressed *infra*, at 13.

billings and expenses have been filed under seal contemporaneously with this Motion.   Accordingly, the requested fee and expense award represents substantially less than what Plaintiff's counsel actually accrued in fees.   Here, because the fee request is less than the lodestar amount, a negative multiplier is created.   There can be no doubt that a negative multiplier – a loss on one's time – is reasonable.

In computing the lodestar, the hourly billing rate to be applied is the hourly rate applicable in the pertinent legal community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Goldberger v. Integrated Resources*, 209 F.3d 43, 47 (2d Cir. 2000). Current rates are used in order to compensate for inflation and loss of use of funds. *LeBlanc Sternbey v. Fletcher*, 143 F.3d 748, 768 (2d Cir. 1998). The total lodestar is the sum of the lodestars of all the plaintiffs' attorneys and firms. The total lodestar of Plaintiff's counsel is $194,420.99.

### C.    The *Johnson* Factors Decidedly Support the Requested Fee

This Court is required to consider the twelve factors set forth in the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).   *See Gottlieb v. Wiles*, 43 F.3d, 474, 483 (10th Cir. 1994) (the court must consider the twelve *Johnson* factors to determine the reasonableness of a fee award).   Application of the *Johnson* factors here indicates the proposed fee is reasonable.[2]

_____

[2] The *Johnso*n factors are as follows:   time and labor required; 2) novelty and difficulty of the issues; 3) skill required to perform the legal services properly; 4)

## 1.     Time and Labor Involved

Plaintiff's counsel expended significant time and effort thoroughly investigating the case, assessing the strengths and weaknesses of the claims and defenses and effectively and efficiently settling the litigation on terms highly favorable to Zenex and its shareholders.

The parties also engaged in extensive document discovery.  Plaintiff served each Defendant with over fifty Requests for Production of Documents, and on June 26, 2006 filed a Motion to Compel. On October 5, 2006, Plaintiff served subpoenas on third party witnesses, Oklahoma Development Group and Aduddell Roofing. Plaintiff's counsel pursued and reviewed thousands of pages of relevant documents produced by the Defendants as well as the Company's public filings, press releases and other public statements, conducted a pre-filing investigation, and worked with a corporate governance expert.

Furthermore, on January 15, 2007, the parties participated in an agreed mediation (the "Mediation") before Gary McGowen, a national mediator experienced in mediating complex securities and shareholder derivative disputes.

After the Mediation, the parties engaged in confirmatory discovery.  Plaintiff and his counsel participated in a confirmatory interview ("Confirmatory Interview") of Defendant David Aduddell.   Prior to the Confirmatory Interview and at the

---

preclusion of other employment; 5) customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) amount involved and results obtained; 9) experience, reputation and ability of the attorneys; 10) undesirability of the case; 11) nature and length of the professional relationship with the client; and 12) awards in similar cases.

request of Plaintiff's counsel, Plaintiff and his counsel submitted written questions and areas of concern to be addressed during the Confirmatory Interview.  During the Confirmatory Interview, Plaintiff had the opportunity to directly question Defendant Aduddell.  The interview concluded only after Plaintiff advised that he had no additional questions for Defendant Aduddell.

After the Confirmatory Interview, Plaintiff, through his counsel of record, served a document request under the "Freedom of Information Act" ("FOIA") to the Army Corps of Engineers (the "ACE").  Plaintiff and his counsel reviewed and analyzed approximately two thousand pages of documents produced by the ACE.

Additionally, Plaintiff's counsel participated in protracted, adversarial settlement negotiations where the terms of the settlement were extensively debated and negotiated with considerable assistance from Gary McGowen. Thereafter, the parties participated in a further settlement conference overseen by Judge West on October 22, 2007. Judge West facilitated the Parties' attempts to finalize the terms of the proposed Settlement.

Thus, appropriate consideration of the time and labor factor supports the reasonableness of the fee requested.

## 2. The Novelty and Difficulty of Questions Raised by the Actions

As a threshold matter, Defendants would argue that Plaintiff would have to establish that a defendant owed a fiduciary duty with respect to any action alleged to be a breach of that duty, an issue Defendants hotly contested.  Defendants would also argue that they would enjoy an extremely deferential standard of

review as to any action constituting an alleged breach.

Under Colorado law, pursuant to which Zenex was incorporated at the time Plaintiff filed his Complaint, "a corporation's directors…manage the business and affairs of a corporation…[Accordingly], courts exercise restraint in allowing a plaintiff to initiate and proceed with a claim in the name of the corporation." *Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629 (Colo. 1999) (citing *Bell v. Arnold*, 175 Colo. 277, 282, 487 P.2d 545, 547 (1971))(footnotes omitted).   If a shareholder has not made demand, he will not be permitted to proceed unless the complaint's "allegations are of sufficient particularity and of such a nature as to excuse them from making the otherwise required demand[]." *Bell*, 487 P.2d at 547.   *See* Fed. R.Civ. P. 23.1 (derivative complaint "shall…allege with particularity…the reason for not making [demand]").   Because Colorado law presumes that a majority of a board are disinterested and independent, a derivative complaint must contain allegations "specific enough to rebut the presumption."   *Hirsch*, 984 P.2d at 636.

Defendants have continued to vigorously deny the claims alleged by Plaintiff and have continued to assert that, at all times, they acted properly, exercised sound business judgment and acted in good faith and in a manner that they reasonably believed to be in the best interests of Zenex.  Defendants asserted that their conduct was entirely proper and consistent with their duties under applicable law.   Thus, given the protection of the business judgment rule, the risk of establishing liability in this case would be great.

Further, the risks of establishing liability posed by the conflicting testimony and evidence would be exacerbated by the risks inherent in this type of litigation: the unpredictability of a lengthy and complex trial; competing "expert" testimony on complex accounting treatments; witnesses could suddenly become unavailable; or the trier of fact could react to the evidence in unforeseen ways.  In cases of this complexity, success at trial is never certain.  Even if Plaintiff was ultimately successful at trial, this action would likely continue through one or more levels of appellate review.  In complex and substantial cases such as these, it must be recognized that even a victory at the trial stage does not guarantee ultimate success.  Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  Indeed, as one court has observed:

> Even a victory at trial is not a guarantee of ultimate success.  If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985) (citing numerous examples), aff'd, 798 F.2d 35 (2d Cir. 1986).

Despite the difficulty of the issues raised, counsel secured an excellent result for Zenex and its shareholders.  As a result, this factor supports the requested award.

9

### 3.     The Skill Required to Perform the Legal Services Properly

It took a great deal of skill to achieve the settlement and the skill and quality of counsel's work is ultimately reflected in the result.   The quality of opposing counsel can also be important in evaluating the quality of plaintiff's counsels' work. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976).   The Defendants were represented by a very capable law firm with a reputation for vigorous advocacy in the defense of complex actions.   The ability of Plaintiff's counsel to obtain a favorable settlement in the face of such formidable opposition confirms the superior quality of Plaintiff's representation.   Although many of Plaintiff's counsels' activities took place outside the courtroom, these services were of the highest quality and could only have been rendered by attorneys as highly experienced as Plaintiff's counsel, who have dedicated their careers to the vigorous prosecution of shareholder interests.

### 4.     The Preclusion of Other Employment by Attorneys Due to Acceptance of the Case

The time spent by Plaintiff's counsel on these cases was at the expense of time that counsel could have devoted to other matters.   Accordingly, to the extent applicable, this factor supports the requested attorneys' fees and reimbursement of expenses.

### 5.     The Customary Fee

The parties negotiated the agreed-upon amount of fees and expenses based on, *inter alia*, awards of fees and expenses in similar shareholder litigation

in which the plaintiff achieved similar relief.   Plaintiff's corporate governance expert, Dr. Pradeep K. Yadav, stated in his declaration, "I also noted that the billing rates charged in this case by Federman & Sherwood are significantly less than the billing rates charged and approved by various courts for comparable services of Federman & Sherwood and other law firms.  In my opinion, the fees and reimbursement of expenses being sought by Derivative Plaintiff's counsel are perfectly fair and reasonable in view of the substantial benefit to the Company and its shareholders derived from the filing, prosecution and settlement of this action." *See*, Yadav Decl., attached to Plaintiff's Settlement Brief, at 17.   Here, if the Court were to award the unopposed fees and expenses, Plaintiff's counsel would receive a negative multiplier, *i.e.*, an amount less than actually incurred by Plaintiff's counsel.

In shareholder litigation across the country, courts typically apply a multiplier of 3:1 or 5:1 to compensate counsel for the risk of contingent representation.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing 23 settlements and multipliers for each, in which the average multiplier is 3.28); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. May 1, 1998) (multiplier of 8.9 in a derivative action); and *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990) ("Most lodestar multiples awarded in cases like this are between 3 and 4.").   Here, because the fee request is less than the lodestar amount, a negative multiplier is created.  There can be no doubt that a negative multiplier – a loss on one's time –

11

is reasonable.

### 6.      Whether the Fee is Contingent or Fixed

Plaintiff's counsel undertook this representation on a contingent basis, assuming a substantial risk that the litigation would yield no recovery and leave them uncompensated.   Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.

Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous securities and derivative actions in which plaintiff's counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.   The complexity and societal importance of shareholder derivative litigation calls for the involvement of the most able counsel. To encourage first rate attorneys to represent plaintiffs on a contingent basis in this type of fiscally and socially important litigation, attorneys' fees awarded should reflect this goal.

Plaintiff's counsel have received no compensation during the course of this litigation and have incurred significant expenses in prosecuting this litigation for the benefit of Zenex and its shareholders. Any fee award or expense reimbursement has always been at risk and completely contingent on the result achieved.   Thus, the contingent nature of the litigation supports the requested percentage.

### 7.     The Results Achieved

Courts consistently recognize that the result achieved is a major factor to be considered in making a fee award.  The United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), recognized that in making a fee award the "most critical factor is the degree of success obtained."  As stated within Dr. Yadav's Declaration, "…the corporate governance reforms mandated by the Stipulation Agreement, should increase the market value of the firm's total assets by about 10%.  Irrespective of the difficulties of making exact quantitative estimates, there can be virtually no doubt that the mandated corporate governance changes should have a significantly positive effect on the Company's value and future."  *See*, Yadav Decl. at 17.  The results achieved are entitled to particular weight, where, as here, the efforts of counsel were instrumental in realizing it.  In this case, the results achieved consist of numerous therapeutic corporate governance reforms to Zenex, which benefit both the Company and its shareholders.

### 8.     The Experience, Reputations and Ability of the Attorneys

The background, experience and accomplishments of Plaintiff's counsel are summarized in the resumes attached to the declarations of counsel submitted herewith.  These resumes show that Plaintiff's counsel have extensive experience and expertise in the field of securities and other complex litigation.

13

### 9.    Undesirability of the Case

Zenex is a small Company.  Thus, it has the potential it would either merge or seek bankruptcy protection.  In either situation, Plaintiff would lose standing to pursue his action after counsel had invested substantial time and expenses in this case.  Accordingly, to the extent applicable, this factor supports the requested attorneys' fees and reimbursement of expenses.

### 10.    Plaintiff's Incentive Fee

As part of the Stipulation, Plaintiff Beitchman seeks an incentive fee in the amount of $10,000.00 to be paid from the $200,000.00 maximum agreed payment.  An incentive fee award that comes from the attorneys' fees awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected.  *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 344 (D.N.J. 2002).  In the *Cendant* derivative litigation, the court granted derivative plaintiff an incentive award.  In awarding derivative plaintiff an incentive fee, that court noted that in class action cases, incentive awards are granted to particular members of a class to reward the public service performed by lead plaintiffs in contributing to the vitality and enforcement of securities laws.  *Id.*  Furthermore, that court noted that derivative plaintiff performed a public service through his willingness to step forward and represent Cendant and its shareholders, and the proposed payment will come out of the proposed attorneys' fees.

Furthermore, in *Moore v. Brown, et al.*, (Electronic Data Systems

14

Corporation ("EDS") Derivative Litigation), Case No. 6:04-cv-77, (E.D. Tx.), the Honorable Leonard Davis awarded plaintiff Donald A. Moore ("Moore") an incentive fee award of $10,000.00. *See* Order, attached hereto as Exhibit 2. This incentive award was based on plaintiff Moore's substantial involvement in that litigation that included, but was not limited to, reviewing documents, pleadings and documents produced by the defendants.

Similar to the plaintiffs in *Cendant* and *EDS*, Plaintiff Beitchman was substantially involved in this litigation and spent hours working with, assisting and supervising his counsel in this litigation, thereby warranting an incentive fee in the amount of $10,000.00. Plaintiff Beitchman was substantially involved in this litigation since the inception of this action. Plaintiff Beitchman received and reviewed thousands of documents and pleadings in this case, including, but not limited to, the Complaint, subpoenas served on third parties, documents produced pursuant to the Freedom of Information Act ("FOIA") request to the Army Corps of Engineers (the "ACE"), drafts of various settlement offers and proposals and the final, filed stamped Stipulation of Settlement. Furthermore, Beitchman remained committed to this litigation and had a genuine desire to provide input to his counsel. Beitchman participated in the mediation by telephone, attended several hearings and approved in person and participated in the Settlement Conference with Judge West.

## IV.    CONCLUSION

For the foregoing reasons, including the substantial benefits provided to

Zenex and its shareholders, the contingent nature of Plaintiff's counsel's work, the complexity of the instant litigation and the prosecution thereof, the quality of Plaintiff's counsel's work, Plaintiff respectfully submits that the Fee and Expense Amount of $190,000.00 is fair and reasonable and should therefore be approved and awarded to Plaintiff's counsel in its entirety at the Final Approval Hearing scheduled for February 29, 2008 and that the Court enter the Final Judgment and Order and the [Proposed] Order granting Plaintiff Beitchman's incentive Fee award in the amount of $10,000.00.   A [Proposed] Order is attached to Plaintiff's Settlement Brief as Exhibit 4, for the Court's review.

Date:  February 22, 2008                          Respectfully submitted,

By:    s/William B. Federman
       William B. Federman, OBA #2853
       **FEDERMAN & SHERWOOD**
       10205 N. Pennsylvania
       Oklahoma City, OK 73120
       Telephone: (405) 235-1560
       Facsimile:  (405) 239-2112
          -and-
       2926 Maple Ave., Suite 200
       Dallas, Texas  75201
       Telephone:  (214) 696-1100
       Facsimile:    (214) 740-0112

       Marc S. Henzel
       **LAW OFFICES OF MARC HENZEL**
       273 Montgomery Ave., Suite 202
       Bala Cynwyd, PA 19004
       Telephone:  (610) 660-8000
       *ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

This is to certify that on February 22, 2008, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James C. McMillin
Paul Ross
Kymala B. Carrier
MCAFEE & TAFT
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102

/s/ William B. Federman
William B. Federman